1

2

3

4                    UNITED STATES DISTRICT COURT

5                    EASTERN DISTRICT OF CALIFORNIA

6

7    TERRANCE MARSH, et al.,            No.  2:19-cv-02382-JAM-DB

8              Plaintiffs,

9         v.                           **ORDER GRANTING DEFENDANTS'
                                        MOTION TO DISMISS AND DENYING**
10   AFSCME LOCAL 3299, et al.,         **PLAINTIFFS' MOTION TO STRIKE**

11             Defendants.

12

13        Plaintiffs, ten University of California employees, bring

14   this action against Attorney General Xavier Becerra, UC President

15   Janet Napolitano, and AFSCME Local 3299 ("the Union") under

16   Section 1983 of the Civil Rights Act.  First Am. Compl. ("FAC"),

17   ECF No. 1.  Plaintiffs allege Cal. Gov. Code §§ 1157.3(b) and

18   1157.12 (collectively, "the SB 866 statutes") created a fee-

19   deduction scheme in which "employee organizations" such as the

20   Union exercise complete control over their member-resignation and

21   fee-deduction policies.  FAC ¶ 1.  Exercising this control, the

22   Union designed a "multi-step revocation process," that made it

23   "effectively impossible" for Plaintiffs "to resign Union

24   membership or revoke Union dues and fee deductions."  Id.  As a

25   result, Plaintiffs remained members of and contributors to the

26   Union long after they wished to resign.

27        Complying with the SB 866 statutes, UC continued to deduct

28   Union-related fees from its employees until the Union certified

                                  1

1 | Plaintiffs resignations and revocations.  <u>See</u> Cal. Gov.

2 | 1157.12(a).  Plaintiffs argue the SB 866 statutes, and

3 | Defendants' participation in the system these provisions create,

4 | violate their constitutional rights.  Specifically, Plaintiffs

5 | argue Defendants violated their First Amendment right to resign

6 | from a union, their First Amendment right to be free from

7 | compelled speech, and their Fourteenth Amendment procedural due

8 | process rights.  FAC ¶¶ 157-172.  They seek monetary,

9 | declaratory, and injunctive relief for these alleged violations.

10 | FAC at 24-25.

11 |     Becerra, Napolitano, and the Union each filed motions to

12 | dismiss.[1]  Mot. to dismiss by Xavier Becerra ("Becerra Mot."),

13 | ECF No. 20; Mot. to dismiss by Janet Napolitano ("Napolitano

14 | Mot."), ECF No. 23; Mot. to Dismiss by AFSCME Local 3299 ("Union

15 | Mot.").  Plaintiffs opposed these motions.  Opp'n by Kiska Carter

16 | et al. to Becerra and Napolitano Mots. ("Opp'n to State"), ECF

17 | No. 36; Opp'n by Kiska Carter, et al. to Union Mot. ("Opp'n to

18 | Union"), ECF No. 37.  Each Defendant then filed a reply.  Reply

19 | by Janet Napolitano ("Napolitano Reply"), ECF No. 38; Reply by

20 | Xavier Becerra ("Becerra Reply"), ECF No. 39; Reply by AFSCME

21 | Local 3299 ("Union Reply"), ECF No. 40.

22 |     Following the parties' motion-to-dismiss briefings,

23 | Plaintiffs filed a motion to strike their previously-filed

24 | opposition briefs and substitute them with briefs complying with

25 | the Court's page limits.  Plfs.' Mot. to Strike, ECF No. 41.

26 |

27 | [1] These motions were determined to be suitable for decision
without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28 | scheduled for June 16, 2020.

1    Becerra and the Union both oppose this motion.  Union Opp'n to
2    Mot. to Strike ("Union Opp'n), ECF No. 42; Becerra Opp'n to Mot.
3    to Strike ("Becerra Opp'n"), ECF No. 43.

4        For the reasons discussed below, the Court denies
5    Plaintiffs' motion to strike and grants Defendants' motions to
6    dismiss.

7

8                    I.   FACTUAL ALLEGATIONS

9        The parties are familiar with the factual background of this
10   case—it is set forth extensively in the complaint, the parties'
11   briefings, and the Court's prior orders.  The Court also
12   highlights material allegations throughout this decision. The
13   Court therefore does not need to restate those allegations here.

14

15                      II.   OPINION

16       A.   Motion to Strike

17       In response to Defendants' motions to dismiss, Plaintiffs
18   filed two opposition briefs—both in violation of the Court's
19   standing order on page limits.  See Opp'n to State (22 pages);
20   Opp'n to Union (24 pages); see also Order re Filing Requirements
21   at 1, ECF No. 3-2.  The standing order limits memoranda of law
22   in opposition to motions to dismiss to fifteen pages "[u]nless
23   prior permission has been granted."  Order re Filing
24   Requirements at 1.

25       Plaintiffs later discovered their error.  Two days after
26   Defendants' motions to dismiss were fully briefed, Plaintiffs
27   filed a motion to strike their nonconforming opposition briefs
28   and substitute them with conforming briefs.  ECF No. 41.

                                 3

1   Plaintiffs' counsel represents that because they "were working

2   remotely due to the coronavirus pandemic and related shelter-in-

3   place orders, [they] mistakenly conflated the Court's 25-page

4   per brief limit . . . with the Court's 15-page rule [for motions

5   to dismiss.]"  Mot. to Strike at 1-2.

6        The Court finds Plaintiffs did not make a showing of good

7   cause in support of their motion to strike.  As the Union

8   argues, Plaintiffs' counsel fail to explain the relationship

9   between teleworking and their failure to comply with the Court's

10  page limits.  Union Opp'n at 3.  Whether at home or in the

11  office, counsel would have had to access the Court's docket

12  online.  The Court appreciates the disruptive effect COVID-19

13  has had, and continues to have, on people's personal and

14  professional lives.  But Plaintiffs' counsel does not argue

15  their inadvertence flowed from any specific disruption.  Rather,

16  they rely on a vague reference to the coronavirus pandemic to

17  excuse their error.  The Court does not find this generalized

18  explanation rises to the level of "good cause"—particularly

19  given Defendants filed their motions to dismiss by February 12.

20  Plaintiffs' counsel had from mid-February to early June to

21  acquaint themselves with the Court's rules and file conforming

22  opposition briefs.

23       That being said, the Court recognizes one of Plaintiffs'

24  opposition briefs responded to Becerra's and Napolitano's

25  separately-filed motions.  Mot. to Strike at 2.  Had Plaintiffs

26  opposed Becerra's and Napolitano's motions with separate briefs,

27  they could have availed themselves of two 15-page page limits:

28  30 pages total.  Rather, Plaintiffs responded to both motions

4

1  with one 22-page brief, honoring the spirit—albeit not the text—

2  of the Court's standing order.  Exercising its "considerable

3  latitude [to] manag[e ] parties' motion practice," the Court

4  declines to sanction Plaintiffs for this technical violation.

5  See Christian v. Mattel, Inc., 286 F.3d 1118, 1129 (9th Cir.

6  2002).

7       The Court does not, however, find Plaintiffs' nonconforming

8  opposition to the Union's motion calls for similar leniency.

9  Even if the Court excuses the 12 pages' worth of arguments

10  incorporated by reference, see Opp'n to Union at 6, Plaintiffs'

11  opposition brief exceeds the Court's page limit by nine pages.  A

12  violation of the Court's standing order requires the offending

13  counsel (not the client) to pay $50.00 per page over the page

14  limit to the Clerk of Court.  Order re Filing Requirements at 1.

15  Moreover, the Court does not consider arguments made past the

16  page limit.  Id.  Plaintiffs' counsel must therefore send a check

17  payable to the Clerk for the Eastern District of California for

18  $450.00 no later than seven days from the date of this Order.

19       B.   Motions to Dismiss

20       Under Federal Rule of Civil Procedure 12(b)(1), a court

21  must dismiss all claims over which it lacks subject-matter

22  jurisdiction.  At the pleading stage, courts take all the

23  allegations in the complaint as true, then ask whether

24  plaintiffs adequately alleged subject-matter jurisdiction.

25  Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121—

26  22 (9th Cir. 2010).

27       Becerra maintains the Court lacks jurisdiction over

28  Plaintiffs' First and Fourteenth Amendment challenges to the SB

866 statutes.  Becerra 5-8.  He argues all ten plaintiffs lack standing to seek prospective relief on these claims.  Id. at 5-7.  He also argues Plaintiffs' requests for prospective relief are moot in several respects.  Id. at 7-8.  The Union joins these arguments in part.  See Union Mot. at 7-8.  As a prerequisite to exercising jurisdiction, the Court must independently satisfy itself that each plaintiff has standing, Wash. Envtl. Council v. Bellon, 732 F.3d 1131, 1139-40 (9th Cir. 2013), and that no claim is moot, Demery v. Arpaio, 378 F.3d 1020, 1025 (9th Cir. 2004).

1.   Standing

Under Article III of the U.S. Constitution, judicial power is limited to "Cases" and "Controversies."  U.S. CONST., art. III.  The requirement that plaintiffs have standing to sue is "rooted in the traditional understanding" of the case-or-controversy requirement. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016). To satisfy the "irreducible constitutional minimum of standing" plaintiffs must demonstrate: (1) they suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) a causal connection between their injury and the defendant's conduct; and (3) a likelihood that a favorable decision would redress their injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  These elements "are not mere pleading requirements[,] but rather an indispensable part of the plaintiff's case." Id.

a)   Claims for Damages

Plaintiffs seek damages from the Union for its alleged violation of their First and Fourteenth Amendment rights.  FAC

6

1    at 25, ¶¶ vii, viii.  Plaintiffs allege the Union restricted

2    their ability to resign, directed UC to deduct membership dues

3    and non-member fees from Plaintiffs' paychecks without their

4    consent, and failed to provide procedural safeguards against

5    compelled speech.  See FAC.  Independent of whether these

6    allegations give rise to cognizable legal theories, the Court

7    finds Plaintiffs allege injuries that are sufficiently "actual"

8    and "concrete" to confer standing.  See Jacobs v. Clark County

9    School Dist., 526 F.3d 419, 426-27 (9th Cir. 2008) (finding

10   plaintiff suffered injury in fact when he was deprived of right

11   to be free from compelled speech); San Diego County Gun Rights

12   Committee v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic

13   injury is clearly a sufficient basis for standing.").

14        Moreover, Plaintiffs allege these injuries are "fairly

15   traceable" to the Union's conduct.  Specifically, Plaintiffs

16   contend the Union's enforcement of its resignation and fee-

17   deduction policies directly impeded Plaintiffs' ability to

18   (1) resign from the Union, and (2) cancel union-related

19   deductions.  See FAC ¶¶ 33-156.  These barriers are inextricably

20   bound up with Plaintiffs' claimed injuries.

21        Finally, if Plaintiffs prevail, the Court could redress

22   this injury with an award of damages. Jacobs, 526 F.3d at 426-

23   27; San Diego County Gun Rights Committee, 98 F.3d at 1130-31.

24   Plaintiffs therefore satisfy the redressability requirement.

25        The Court finds all ten Plaintiffs have standing to bring

26   their damages claims against the Union.

27              b)   Claims for Prospective Relief

28        Plaintiffs also seek declaratory and injunctive relief

7

1   against Becerra, Napolitano, and the Union.  FAC at 24-25.  As

2   Becerra argues, Plaintiffs face a more exacting injury-in-fact

3   requirement when requesting prospective relief.  Becerra Mot. at

4   6.  "In the particular context of injunctive and declaratory

5   relief, a plaintiff must show that he has suffered or is

6   threatened with a concrete and particularized legal harm . . .

7   coupled with a sufficient likelihood that he will again be

8   wronged in a similar way."  <u>Cantanella v. State of California</u>,

9   304 F.3d 843, 852 (9th Cir. 2002).  Plaintiffs seek prospective

10  relief on each of their alleged injuries.

11                      i.   Right to Resign

12       Each plaintiff lacks standing to seek prospective relief

13  against any Defendant on their right-to-resign claim.

14  Plaintiffs argue Defendants' "deliberate obfuscation" of the

15  union-resignation process satisfies the injury-in-fact

16  requirement.  FAC ¶ 3.  But, even assuming the truth of this

17  injury, Plaintiffs are unlikely to "again be wronged in a

18  similar way."  <u>See</u> <u>Cantanella</u>, 304 F.3d at 852.  The complaint

19  contains admissions from eight of the ten plaintiffs that they

20  no longer belong to the Union.  FAC ¶¶ 41 (Marsh admission), 81

21  (Van Antwerp admission), 91 (Macomber admission), 103 (Jordan

22  admission), 117 (Davidson admission), 128 (Grosse admission),

23  140 (Dioso admission), 153 (Carter admission).  And Mendoza does

24  not allege one way or the other whether he is still a member of

25  the Union and whether Defendants are likely to prevent him from

26  resigning in the future.

27       As of January 24, 2020, only Edde lacked clarity on whether

28  she still belonged to the Union.  <u>See</u> FAC ¶ 58 ("To date, the

                                    8

1 Union has not confirmed whether she is still a union member.").

2 That ambiguity has since been resolved: she isn't. <u>See</u> Ex. 7 to

3 Union Mot., ECF No. 30-7; <u>see also</u> <u>Safe Air for Everyone v.</u>

4 <u>Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a

5 factual attack on jurisdiction, the district court may review

6 evidence beyond the complaint without converting the motion to

7 dismiss into a motion for summary judgment.").

8      Plaintiffs do not allege they intend to re-join the Union.

9 Nor is the Court persuaded by Plaintiffs' arguments that the

10 Union might, at any time, reinstitute their memberships without

11 consent.  Opp'n to State at 18.  This suggestion is wholly

12 speculative—even taking as true Mendoza's allegation that the

13 Union forged his 2017 membership form.  <u>See</u> FAC ¶¶ 74-75.

14 Plaintiffs' belief that Defendants will force Union membership

15 on unwilling participants via forgery or other unsavory means is

16 just that: a belief.  Standing to bring claims for prospective

17 relief requires more than speculative allegations of future

18 injury.  <u>Mayfield v. U.S.</u>, 599 F.3d 964, 970 (9th Cir. 2010)

19 (Neither "speculation [n]or subjective apprehension about future

20 harm support[s] standing.").  Absent a likely-recurring injury,

21 Plaintiffs lack standing to seek prospective relief on a right-

22 to-resign claim against Becerra, Napolitano, or the Union.  The

23 Court dismisses these claims without prejudice.  <u>Fleck and</u>

24 <u>Assocs., Incl v. Phoenix, City of, an Arizona Mun. Corp.</u>, 471

25 F.3d 1100, 1106-07 (9th Cir. 2006) (dismissing claims without

26 prejudice for lack of standing).

27               ii.  Compelled Speech

28      Plaintiffs also argue they were injured when Defendants

9

1    required them to pay membership dues and non-member service fees
2    to the Union absent clear and convincing evidence of a First
3    Amendment waiver.  FAC ¶ 3.  But Marsh, Edde, Davidson, and
4    Mendoza concede UC is no longer deducting Union-related fees
5    from their paychecks.  See Opp'n to State at 18 ("Marsh,
6    Mendoza, Edde, and Davidson's dues deductions have ceased.").
7    They are therefore unlikely to suffer a comparable injury again
8    in the future.  See Cantanella, 304 F.3d at 852.  As already
9    discussed, the allegations in the complaint do not support
10   Plaintiffs' argument that the Defendants are likely to
11   reinstitute deductions against Marsh, Mendoza, Edde, or Davidson
12   without consent.  Absent, a likely-recurring injury, these
13   Plaintiffs lack standing to seek prospective relief against
14   Defendants on their compelled speech claim.  The Court dismisses
15   this claim without prejudice

16       The six remaining plaintiffs—Macomber, Jordan, Van Antwerp,
17   Grosse, Dioso, and Carter—allege UC still deducts a non-member
18   service fee from their paychecks.  FAC ¶¶ 81, 84, 91, 96, 103,
19   112, 128, 132, 140, 145, 153, 156.  Because the fee "renews each
20   year on the anniversary date of the employee's union
21   membership," FAC ¶ 28, there is a "sufficient likelihood" that
22   they will suffer this alleged harm again in the future.  Contra
23   Lyons, 461 U.S. at 107-08.  Macomber, Jordan, Van Antwerp,
24   Grosse, Dioso, and Carter therefore alleged an injury in fact.

25       Macomber, Jordan, Van Antwerp, Grosse, Dioso, and Carter
26   likewise allege Napolitano and the Union caused this injury.
27   The Union tells UC who is responsible for dues and non-member
28   fees.  FAC ¶ 23.  UC then withdraws the deductions from the

1  designated employees' paychecks and remits it to the Union.  FAC

2  ¶ 1.  The Court could redress this injury by issuing the

3  permanent injunction Plaintiffs request.  See FAC at 24, ¶ vi.

4  These Plaintiffs therefore have standing to seek prospective

5  relief from Napolitano and the Union on their compelled speech

6  claim.

7       Macomber, Jordan, Van Antwerp, Grosse, Dioso, and Carter do

8  not, however, adequately allege their compelled speech injuries

9  are fairly traceable to Becerra by way of the SB 866 statutes.

10  SB 866 amended the California Government Code to include section

11  1157.12 and subdivision (b) of section 1157.3.  Section 1157.12

12  sets forth procedures for public employers to adjust or stop

13  payroll deductions for union membership.  Cal. Gov. Code

14  § 1157.12.  It requires public employers to rely solely on

15  certifications by "employee organizations" to determine which

16  employees have authorized payroll deductions.  See Cal. Gov.

17  Code § 1157.12(a).  Employees cannot change or cancel those

18  authorizations directly through their public employer; rather,

19  public employers must "[d]irect employee requests to cancel or

20  change deductions for employee organizations to the employee

21  organization" itself.  See Cal. Gov. Code § 1157.12(b).  The

22  revocability of an employee's prior authorization is then

23  "determined by the terms of the authorization." See Cal. Gov.

24  Code § 1157.3(b).

25       As they apply here, the SB 866 statutes give the Union sole

26  authority to tell UC when UC employees are responsible for

27  Union-related fees.  See Cal. Gov. Code §§ 1157.3(b), 1157.12.

28  Plaintiffs contend the state's requirement that UC defer to the

1    Union's resignation and fee-revocation policies caused

2    Plaintiffs' compelled-speech injury.  Opp'n to State at 17.  The

3    Court disagrees.  The causal connection between Plaintiffs'

4    injuries and California's broad grant of authority is too

5    tenuous to confer standing on Plaintiffs' compelled-speech

6    claims.  Plaintiffs do not allege the SB 866 provisions require

7    or encourage the Union's specific fee-deduction policies.  Nor

8    do they allege these provisions compelled Plaintiffs to join the

9    Union or authorize Union-related payroll deductions in the first

10   place.  See Becerra Mot. at 10.  Plaintiffs entered into a

11   private agreement with the Union and UC—those agreements would

12   exist even if sections 1157.3 and 1157.12 did not.  The Court

13   therefore finds Macomber, Jordan, Van Antwerp, Grosse, Dioso,

14   and Carter's non-member service fee payments are not fairly

15   traceable to Becerra viz. the SB 866 statutes.  Absent an

16   adequate causal connection, these plaintiffs lack standing to

17   seek prospective relief on their compelled speech claim against

18   Becerra.  The Court dismisses this claim without prejudice.

19                          iii. Due Process

20        Finally, Plaintiffs seek prospective relief against

21   Becerra, Napolitano and the Union for their procedural due

22   process claim.  FAC ¶¶ 163-64.  Plaintiffs allege they only

23   signed the Union's membership forms because (1) they believed

24   Union membership was a mandatory condition of their employment,

25   (2) a colleague told them to, and/or (3) they did not know they

26   had a First Amendment right not to join the Union.  FAC ¶¶ 30-

27   31, 50-51, 61-62, 77-78, 87-88, 98, 100, 114-15, 124-25, 134-35,

28   147-48.  One plaintiff contends he never signed a membership

                                  12

1   form at all.   FAC ¶¶ 74-75.

2        Plaintiffs argue Defendants had a constitutional obligation

3   to ensure the Union did not treat these compelled membership

4   agreements as knowing, intelligent, and voluntary waivers of

5   Plaintiffs' First Amendment Rights.   FAC ¶¶ 2-3, 163-64.

6   Instead, Defendants created a deduction scheme where (1) unions

7   exercise complete control over union-related payroll deductions,

8   and (2) neither the state nor public employers corroborate

9   public employees' consent to these deductions.   Id.; see also

10  Opp'n to State at 17-18.   This procedural deficiency, Plaintiffs

11  argue, amounts to an injury in fact.

12       But as discussed above, only Macomber, Jordan, Van Antwerp,

13  Grosse, Dioso, and Carter are likely to continue paying Union-

14  related fees as a result of this uninformed decision.   FAC

15  ¶¶ 81, 84, 91, 96, 103, 112, 128, 132, 140, 145, 153, 156.

16  These are the only plaintiffs who are likely to suffer future

17  harm from Defendants' alleged due process violation.

18  Accordingly, only Macomber, Jordan, Van Antwerp, Grosse, Dioso,

19  and Carter alleged an injury in fact sufficient to confer

20  standing on this claim.

21       These plaintiffs allege their procedural injury is fairly

22  traceable to Becerra and the Union.   Cal. Gov. Code § 1157.3

23  requires public employers to "honor employee authorizations" for

24  union-related payroll deductions.   Section 1157.12 then requires

25  public employers to exclusively rely upon employee

26  organizations' representations about whether an employee has

27  authorized a payroll deduction.   Cal. Gov. Code § 1157.12(a).

28  The organization need not present any proof of that

1   authorization unless a dispute arises.  Id.  The Court finds the

2   causal connection between the scheme SB 866 creates and

3   Plaintiffs' due process injuries are sufficiently direct to

4   confer standing.  As is the causal link between the Union's

5   alleged conduct in procuring employee authorizations and

6   Plaintiffs alleged injuries.  See FAC ¶¶ 30-31, 50-51, 61-62,

7   77-78, 87-88, 98, 100, 114-15, 124-25, 134-35, 147-48.  With a

8   favorable decision, the Court could redress Macomber, Jordan,

9   Van Antwerp, Grosse, Dioso, and Carter's claims for prospective

10  relief against Becerra and the Union.  See FAC at 24 (i) (citing

11  28 U.S.C. §§ 2201, 2202).  These plaintiffs have standing to

12  seek prospective relief on their due process claims against the

13  Union and Becerra.

14      Plaintiffs' due process injuries are not, however, fairly

15  traceable to Napolitano.  California law does not allow public

16  employers to create procedural safeguards for public employees

17  in this context.  Rather, it requires "public employers other

18  than the State" to rely exclusively on an employee

19  organization's "certification" that one of its members has

20  authorized a payroll deduction.  Cal. Gov. Code § 1157.12(a).

21  Without a sufficient causal connection between Napolitano's

22  conduct and Plaintiffs' alleged injury, Macomber, Jordan, Van

23  Antwerp, Grosse, Dioso, and Carter lack standing to seek

24  prospective relief from Napolitano on their due process claim.

25  The Court dismisses this claim without prejudice.

26              iv.  Summary-Standing for Prospective Relief

27      To summarize, no plaintiff has standing to seek prospective

28  relief on their right-to-resign claim; the Court dismisses this

14

1   claim without prejudice.   Macomber, Jordan, Van Antwerp, Grosse,

2   Dioso, and Carter are the only plaintiffs who have standing to

3   seek prospective relief on the compelled speech and due process

4   claims.   They have standing to bring their compelled speech

5   claim against the Union and Napolitano, and they have standing

6   to bring their due process claim against the Union and Becerra.

7   The Court dismisses all remaining claims for prospective relief

8   without prejudice.

9           2.   <u>Mootness</u>

10       Article III of the Constitution also proscribes federal

11  courts from adjudicating moot claims.   U.S. CONST., art. III;

12  <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975).   To pose a "live

13  case or controversy," claims must be "definite and concrete";

14  they must "touch[] the legal relations of parties having adverse

15  legal interests."   <u>DeFunis v. Odegaard</u>, 416 U.S. 312, 317

16  (1974).   If a case does not present questions "affect[ing] the

17  rights of litigants in the case before [the court]," it is not a

18  case the court can decide.   See <u>Preiser</u>, 422 U.S. at 401.

19       Plaintiffs' request for prospective relief on their right-

20  to-resign claim is moot for the same reason each plaintiff lacks

21  standing to bring this claim.   All ten plaintiffs have

22  successfully resigned from the Union.   See FAC ¶¶ 41, 81, 91,

23  103, 117, 128, 140, 153; Hughes Decl., ¶ 11, ECF No 30-4;

24  Schuler Decl. ¶ 8; Exh. 7, ECF No. 30-7.   No plaintiff alleges

25  they intend to rejoin.   See <u>Babb v. Cal. Teachers Assocs.</u>, 378

26  F.Supp.3d 857, 885-86 (C.D. Cal. 2019).

27       Marsh, Edde, Davidson, and Mendoza's claims for prospective

28  relief on their due process and compelled speech claims are also

                                    15

1    moot.  They concede UC is no longer deducting Union dues or non-

2    member fees from their paychecks.  See Opp'n to State at 18.

3    The Court cannot grant these plaintiffs prospective relief for

4    fees they are no longer paying.  See Babb, 378 F.Supp.3d at 870-

5    71.  Contrary to Plaintiffs' arguments, the complaint does not

6    sufficiently allege Marsh, Edde, Davidson, and Mendoza's claims

7    fall into the "capable of repetition, yet evading review"

8    exception to the mootness doctrine.  See Few v. United Teachers

9    Los Angeles, No. 2:18-cv-09531-JLS-DFM, 2020 WL 633598, at *4-6

10   (C.D. Cal. Feb. 10, 2020).

11       Becerra contends Plaintiffs' non-member status also moots

12   Macomber, Jordan, Van Antwerp, Grosse, Dioso, and Carter's

13   claims for prospective relief on their due process and compelled

14   speech claims, as "the SB 866 statutes only govern the

15   administration of dues deductions for existing members" of

16   employee organizations.  Becerra Mot. at 8 (emphasis in

17   original).  This argument lacks support.  The cases Becerra

18   cites, Hernandez v. AFSCME Cal., 386 F.Supp.3d 1300, 1306-08

19   (E.D. Cal. 2019), appeal docketed, No. 20-15076 (9th Cir. Jan

20   16, 2020) and Babb v. Cal. Teachers Ass'n, 378 F. Supp. 3d 857,

21   886 (C.D. Cal. 2019), appeal docketed, No. 19-55692 (9th Cir.

22   June 18, 2019) did not adopt or endorse this reading of the SB

23   866 statutes.  Nor does the text of Cal. Gov. Code §§ 1157.3 and

24   1157.3 indicate the statutes' purview is as limited as Becerra

25   suggests.  Macomber, Jordan, Van Antwerp, Grosse, Dioso, and

26   Carter continue to pay non-member fees as a result of

27   Defendants' alleged compelled speech and due process violations—

28   notwithstanding their successful resignations.  See FAC ¶¶ 81,

16

84, 91, 96, 103, 112, 128, 132, 140, 145, 153, 156.   The Court
finds these claims are not moot.

### 3.   Agency Jurisdiction

Napolitano and the Union argue Plaintiffs' claims fall
within PERB's exclusive jurisdiction because their "allegations
of improper Union conduct arise out of, and would form the basis
for, unfair practice allegations . . . under the Higher
Education Employer-Employee Relations Act ("HEERA")."
Napolitano Mot. at 6; Union Mot. at 1.   PERB possesses
"exclusive jurisdiction" over matters covered by HEERA.   Cal.
Gov. Code § 3563.2.   This jurisdiction extends to "[t]he initial
determination as to whether the charges of unfair practices are
justified, and, if so, what remedy is necessary to effectuate
the purposes of [the Act]."   Id.   PERB's preemptive reach not
only covers activities that are "protected or prohibited" by
HEERA; it also encompasses conduct that HEERA "arguably"
protects or prohibits.   Cf. Gabriele v. Service Employees Int'l
Union, Local 1000, -- F. Supp. 3d --, 2:19-cv-00292-WBS-KJN,
2020 WL 3163072, at *4-5 (E.D. Cal. June 12, 2020) (citing El
Rancho Unified School Dist. V. National Educ. Assn., 33 Cal.3d
946, 952-53 (1983)).

Parties cannot evade PERB's jurisdiction with artful
pleading or by arguing the conduct challenged does not
constitute an "unfair [labor] practice."   Id. at *5 ("PERB
instead has jurisdiction to adjudicate both unfair practices and
whether conduct is protected or prohibited by the act.").   As
this district recently explained:

[W]hat matters is whether the underlying conduct on

17

1
2
3
4
5
6

    which the suit is based -- however described in the
    complaint -- may fall within PERB's exclusive
    jurisdiction. (citation omitted); cf. Link, 142 Cal.
    App. 3d at 769, 191 Cal.Rptr. 264 (finding that claims
    fall under PERB's exclusive jurisdiction where
    plaintiffs alleged only constitutional challenges).
    The preemption question therefore turns on whether
    plaintiffs' claims arise from conduct that is
    protected, prohibited, or arguably protected or
    prohibited under the [Act], regardless of the legal
    labels assign[ed] to the[] claims.

7

Id.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

       Following this Court's justiciability analysis, a handful of claims remain: Plaintiffs' three claims for damages against the Union; Macomber, Jordan, Van Antwerp, Grosse, Dioso, and Carter's request for prospective relief against Becerra and the Union on their due process claim; and Macomber, Jordan, Van Antwerp, Grosse, Dioso, and Carter's request for prospective relief against Napolitano and the Union on their compelled speech clam.  The Court finds HEERA arguably prohibits the conduct underlying the Union's right-to-resign claim for damages against the Union.  Under Cal. Gov. Code § 3571.1(b), "it [is] unlawful for an employee organization to . . . interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter."  Plaintiffs' right-to-resign claim contends the Union's policies and conduct served as a restraint on their ability to resign from the organization.  See FAC.  The right to accept or refuse union membership is one HEERA confers.  Cal. Gov. Code § 3565.  Because the conduct underlying Plaintiffs' right-to-resign claim against the Union is arguably conduct HEERA prohibits, PERB has exclusive jurisdiction over that claim.  That Plaintiffs' statutory right

18

1    may overlap with a right conferred by the U.S. Constitution does
2    not change this result.  <u>Cf.</u> <u>Link</u>, 142 Cal. App. 3d at 769.  The
3    Court dismisses this right-to-resign claim for damages with
4    prejudice.

5         Moreover, the Court finds Plaintiffs' compelled-speech
6    claim, both for damages against the Union and for prospective
7    relief against the Union and Napolitano, fall within PERB's
8    exclusive jurisdiction.  Plaintiffs' compelled speech claim sets
9    itself out as a right that naturally flows from <u>Janus</u>, 138 S.
10   Ct. at 2486.  In its farthest-reaching form, <u>Janus</u> proscribed
11   state and public-sector unions from "extract[ing] agency fees
12   from nonconsenting employees."  <u>Id.</u>  Notably, in the context of
13   <u>Janus</u>, "nonconsenting employees" referred to individuals who
14   were required to pay union fees even though they specifically
15   refused union membership.  Macomber, Jordan, Van Antwerp,
16   Grosse, Dioso, and Carter, argue they, too, are "nonconsenting
17   employees" because their decision to join the Union was not
18   knowing, intelligent, and voluntary.  FAC ¶¶ 2-3, 163-64.
19   Rather, they consented to Union membership because UC and the
20   Union either led them to believe union membership was required
21   or simply failed to inform them that union membership was
22   optional.  FAC ¶¶ 77-78, 87-88, 99-100, 124, 134-35, 148.

23        Viewed in its simplest form, Plaintiffs' compelled-speech
24   claim, must like their right-to-resign claim, alleges
25   interference with their "right to refuse to join employee
26   organizations or to participate in the activities of those
27   organizations."  Cal. Gov. Code § 3565.  Sections 3571
28   ("Unlawful employer practices") and 3571.1 ("Unlawful employee

1    organization practices") arguably proscribe this type of

2    obstruction.  Cal. Gov. Code §§ 3571(a), 3571.1(a).  Because the

3    conduct underlying Plaintiffs' compelled-speech claim against

4    the Union and Napolitano is arguably conduct HEERA prohibits,

5    PERB has exclusive jurisdiction over this claim as well.  The

6    Court dismisses this compelled speech claim with prejudice.

7    The Court does not, however, find the conduct underlying

8    Plaintiffs' procedural due process claim against the Union and

9    Becerra is conduct HEERA arguably prohibits or protects.  The

10   Court retains jurisdiction over this claim.

11                  4.   Failure to State a Claim

12   Having resolved Defendants' jurisdictional challenges, the

13   Court turns to the question of whether Plaintiffs have stated a

14   claim for which relief can be granted.  Fed. R. Civ. Proc.

15   12(b)(6).  Plaintiffs' procedural due process claim[2] is all that

16   remains.  The "standard [procedural due process] analysis . . .

17   proceeds in two steps."  Swarthout v. Cooke, 526 U.S. 216, 219

18   (2011).  A court must "first ask whether there exists a liberty

19   or property interest of which a person has been deprived."  Id.

20   If so, the court then asks "whether the procedures [protecting

21   that right] were constitutionally deficient."  Id. (citing

22   Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460

23   (1989).

24   Plaintiffs argue they have a "property interest in their

25   salary and a constitutional interest against compelled speech."

26   _____

27   [2] To clarify, this claim consists of all Plaintiffs' request for
     damages against the Union, along with Macomber, Jordan, Van
     Antwerp, Grosse, Dioso, and Carter's request for prospective
28   relief against the Union and Becerra.

1    Opp'n to State at 21.  As a preliminary matter, the Court agrees

2    with Becerra that Plaintiffs did not assert their "property

3    interest" theory of liability in their complaint.  See Becerra

4    Reply at 4 (citing Opp'n to State at 2).  "Plaintiffs' failure to

5    articulate these alleged interests in their Complaint dooms, on

6    its own, their assertion of a due process violation on this

7    basis."  Id.; see also Provencio v. Vazquez, 258 F.R.D. 626, 639

8    (E.D. Cal. 2009).

9         The Court also finds the "liberty interest" theory of due

10   process liability largely comes up short.  With this theory,

11   Plaintiffs purport to rely upon the liberty interest Janus

12   created. 138 S. Ct. at 2460.  But Janus only discussed the rights

13   of public employees who refused union membership from the get-go;

14   that is, public employees who never signed union membership

15   agreements.  Id.  Janus did not, as Plaintiffs suggest, provide a

16   basis for invalidating union membership agreements for employees

17   who, post-Janus, come to regret their membership decision.  See

18   Cooley v. Cal. Statewide Law Enforcement Assn., 385 F.Supp.3d

19   1077, 1079-80 (E.D. Cal. 2019).  Nor does the First Amendment,

20   more broadly, "confer . . . a constitutional right to disregard

21   promises that would otherwise be enforced under state law."

22   Cohen v. Cowles Media Co., 501 U.S. 663, 672 (1991).  Save for

23   Mendoza, FAC ¶¶ 74-75, Plaintiffs' Union membership, membership

24   dues, and nonmember services fees flowed from the express terms

25   of contracts Plaintiffs entered into.  See FAC ¶¶ 30, 50, 87,

26   114, 122, 134, 147.  Consequently, only Mendoza adequately

27   alleges the deprivation of a liberty interest comparable to the

28   one Janus recognized.

21

1    But identifying a protected liberty interest is only one of
2    two requirements.  To state a procedural due process claim, a
3    plaintiff must also allege how the procedures safeguarding that
4    interest were constitutionally deficient.  See Kentucky Dept. of
5    Corrections, 490 U.S. at 460.  This, Mendoza failed to do.
6    Mendoza did not allege what procedures were constitutionally
7    required, or how the Union[3] or Becerra, through SB 866, fell
8    short of those requirements.  Moreover, the defense of this claim
9    Plaintiffs included in their opposition brief fell outside the
10   page limit.  The Court did not consider these arguments.

11   The Court finds Plaintiffs failed to state a due process
12   claim for either damages or prospective relief.  The Court
13   therefore dismisses this claim without prejudice.

14

15                    III.   ORDER

16   For the reasons set forth above, the Court DENIES
17   Plaintiffs' motion to strike and GRANTS Defendants' motions to
18   dismiss.  Plaintiffs lack standing to seek prospective relief on
19   their right-to-resign claims against all three Defendants.  These
20   claims are also moot.  Accordingly, the Court DISMISSES these
21   claims WITHOUT PREJUDICE.

22   Moreover, Marsh, Mendoza, Edde, or Davidson lack standing to
23   seek prospective relief on their compelled-speech and due process
24   claims against all three Defendants.  These claims are also moot.
25   The Court therefore DISMISSES them WITHOUT PREJUDICE.

26   _____
27   [3]Because Plaintiffs failed to allege the Union maintains
     constitutionally-deficient procedures, the Court declines to
     resolve the question of whether the Union's failure to enact
28   sufficient procedural safeguards amounts to "state action."

1    Macomber, Jordan, Van Antwerp, Grosse, Dioso, and Carter

2    lack standing to seek prospective relief on their due process

3    claim against Napolitano and lack standing to seek prospective

4    relief on their compelled speech claim against the Union.  The

5    Court DISMISSES these claims WITHOUT PREJUDICE.

6        The California Public Employment Relations Board has

7    exclusive jurisdiction over: (1) Plaintiffs' right-to-resign and

8    compelled speech claims for damages against the Union; and

9    (2) Macomber, Jordan, Van Antwerp, Grosse, Dioso, and Carter's

10   request for prospective relief on their compelled speech claims

11   against the Union and Napolitano.  The Court DISMISSES these

12   claims WITH PREJUDICE.

13       Finally, Plaintiffs fail to state a procedural due process

14   claim.  The Court DISMISSES Plaintiffs' due process claim for

15   damages against the Union WITHOUT PREJUDICE.  The Court also

16   DISMISSES Macomber, Jordan, Van Antwerp, Grosse, Dioso, and

17   Carter's request for prospective relief against the Union and

18   Becerra WITHOUT PREJUDICE.  Attached hereto is an exhibit

19   summarizing the Court's decision.

20       If Plaintiffs elect to amend their complaint with respect to

21   these claims, they shall file an Amended Complaint within twenty

22   (20) days of this Order. Defendants' responsive pleading is due

23   twenty (20) days thereafter.

24       IT IS SO ORDERED.

25   Dated: July 27, 2020

26

27                                          JOHN A. MENDEZ,
                                            UNITED STATES DISTRICT JUDGE
28

| | | Prospective Relief | | | Money Damages |
|---|---|---|---|---|---|
| | | *Becerra* | *Napolitano* | *Union* | *Union* |
| **Right to Resign** | *Marsh* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Edde* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Mendoza* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Van Antwerp* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Macomber* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Jordan* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Davidson* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Grosse* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Dioso* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Carter* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| **Compelled Speech** | *Marsh* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Edde* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Mendoza* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Van Antwerp* | Standing | PERB Jurisdiction* | PERB Jurisdiction** | PERB Jurisdiction* |
| | *Macomber* | Standing | PERB Jurisdiction* | PERB Jurisdiction* | PERB Jurisdiction* |
| | *Jordan* | Standing | PERB Jurisdiction* | PERB Jurisdiction* | PERB Jurisdiction* |
| | *Davidson* | Standing, Mootness | Standing, Mootness | Standing, Mootness | PERB Jurisdiction* |
| | *Grosse* | Standing | PERB Jurisdiction* | PERB Jurisdiction* | PERB Jurisdiction* |
| | *Dioso* | Standing | PERB Jurisdiction* | PERB Jurisdiction* | PERB Jurisdiction* |
| | *Carter* | Standing | PERB Jurisdiction* | PERB Jurisdiction* | PERB Jurisdiction* |
| **Procedural Due Process** | *Marsh* | Standing, Mootness | Standing, Mootness | Standing, Mootness | Failure to state a claim |
| | *Edde* | Standing, Mootness | Standing, Mootness | Standing, Mootness | Failure to state a claim |
| | *Mendoza* | Standing, Mootness | Standing, Mootness | Standing, Mootness | Failure to state a claim |
| | *Van Antwerp* | Failure to state a claim | Standing | Failure to state a claim | Failure to state a claim |
| | *Macomber* | Failure to state a claim | Standing | Failure to state a claim | Failure to state a claim |
| | *Jordan* | Failure to state a claim | Standing | Failure to state a claim | Failure to state a claim |
| | *Davidson* | Standing, Mootness | Standing, Mootness | Standing, Mootness | Failure to state a claim |
| | *Grosse* | Failure to state a claim | Standing | Failure to state a claim | Failure to state a claim |
| | *Dioso* | Failure to state a claim | Standing | Failure to state a claim | Failure to state a claim |
| | *Carter* | Failure to state a claim | Standing | Failure to state a claim | Failure to state a claim |

\* -- The Court dismissed the claim with prejudice.